Case 79.—ACTION BY PATTIE D. STONE AGAINST SAMUEL
    C. NUCKOLS AND OTHERS TO RECOVER ONE-HALF OF
    A CERTAIN TRACT OF LAND.—June 1.

## Nuckols, &c. v. Stone.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Nuckols, &c. v. Stone.

Judgment for plaintiff.   Defendant appeals.   Affirmed.

Deeds—Vested Estate—Deposited With Third Party—Power to
    Cancel—Power Not Exercised—Death of Grantor—Validity
    of Deed—A deed was executed by D. to N. for land in which
    D. retained a life interest and said deed was delivered to
    G., with written directions signed by both grantor and gran-
    tee that G. should surrender it to the grantor whenever it
    should be demanded by him, and the grantor then had the
    right to destroy it; but if not so demanded by grantor in
    his lifetime it should then be filed by G. in the proper office
    for record.   The grantor died leaving a will which was
    executed before the deed, and without having demanded
    the deed from G., or in any way undertaking to cancel it,
    and upon the death of grantor G. filed the deed for record
    in the proper office.   Held—That the deed and written con-
    tract must be read together, and by same the grantor
    vested the fee in the grantees, reserving to himself a life
    estate, with power to cancel the deed in a certain way,
    and the deed not having been defeated in the manner pre-
    scribed, became absolute at his death.

J. D. & G. R. HUNT, LEWIS A. NUCKOLS and WALLACE &
HARRIS for appellants.

We have not attempted to consider in this brief the question
whether the allowance of our contention would defeat the pur-
poses of the maker of the instrument.   We would regard it a
fruitless speculation to inquire whether Dudley Dedman knew
that further action on his part was necessary to make the writ-
ing executed by him a valid deed.   He was an intelligent man,
and had the advice of legal counsel.   Whether he knew or did
not know of the defect, and whether he intended or did not
intend on certain contingencies to remedy the defect, it is suf-
ficient under our view of the law to say that he did not do so,
and that the writing for that reason never became effectual.
Our contentions are:

1. The paper in question, whether the maker called it a deed
or a will, was in contemplation of law a testamentary paper,
intended to have no legal effect till the maker's death; and
that not having been executed or probated or capable of being
probated as a will it fails of any legal effect.

2. If it be treated as a deed, it never became the deed of
the grantor, because it was never delivered in such manner as
to make it valid as a deed.

Nuckols, &c. v. Stone.

## AUTHORITIES CITED.

1. The writing in this case was never delivered so as to make it a deed. (3 Washburn Real Prop., secs. 2156, 2158; Jones on Real Estate in Conveyancing, secs. 1267, 1269; 9 Am. & Eng. Ency., 2d Ed., p. 155; 13 Cyc., 569; Note to Welborn v. Weaver, 63 Am. Dec., 235; Note to Munro v Bowles, 54 L. R. A., 872-874.)

Numerous authorities cited in above references: Prutsman v. Baker, 30 Wis., 644; Osborne v. Estinger, 155 Ind., 351, 58 N. E., 442; Barnes v. Barnes, 138 Ill., 649, 28 N. E., 983, 984; Johnson v. Johnson (R. I.), 54 Atl., 378; Fitch v. Bunch, 30 Cal., 208; Walter v. Way, 120 Ill., 96, 48 N. E., 422; Stinson v. Anderson, 96 Ill., 373, 376; Williams v. Daubner, 103 Wis., 521, 79 N. W., 748; Allsop v. Swathen, 7 Conn., 500, 503; Porter v. Woodhouse, 59 Conn., 568, 13 L. R. A., 65; Brown v. Cook, 34 N. H., 460; Bank v. Webster, 44 N. H., 269; Johnson v. Farley, 45 N. H., 505; Baker v. Haskell, 47 N. H., 479, 93 Am. Dec., 456; Ball v. Forman, 37 Ohio St., 139. Kentucky authorities: Barlow v. Hunter, 1 Mar., 98; Tinsley v. Tinsley, 7 Ky. Law Rep., 288; Colyer v. Hyden, 94 Ky., 182; Haydon v. Easter, 15 Ky. Law Rep., 597; Hudson v. Redford, 23 Ky. Law Rep., 2347; 11 Am. & Eng. Ency. (2d Ed.), 356.

2. The instrument in question is a testamentary paper, and not a deed; and not having been executed with the proper formalities, it passes no title.

## AUTHORITIES CITED.

Am. & Eng. Ency. Law (1st Ed.), vol. 29, pp. 138, 139 (note), 145, 146 (note), 149; Enc. Law & Proc., vol. 13, page 521; Perry on Trusts, 3d Ed., vol. 1, p. 82; Kelley v. Davis, 13 So. Rep., 785 (Ala.), cited in Am. & Eng. Enc. L., vol. 29, p. 149 (note); Cunningham v Davis, 62 Miss, 366, cited in Am. & Eng. Enc. L., vol. 29, p. 148 (note); Leaver v. Gauss, 62 Ia., 314; Gillham v. Mustin, 42 Ala., 366; Croker v. Smith (Ala.), 10 So. Rep., 258; Reed v Hazelton, 37 Kan., 321, 15 Pac. Rep., 177, at page 180; Wellborn v. Weaver, 17 Ga., 267, 63 Am. Dec., 235, at p. 242; Habergham v. Vincent, 2 Ves., jr., 204; Wall v. Wall, 30 Miss., 91, 64 Am. Dec., 147; Babb v Harrison, 9 Rich. Eq. (So. Car.), —, 70 Am. Dec., 204; Johnson v. Yancey, 20 Ga., 65 Am. Dec., 646; Turner v Scott, 51 Pa. St., 126; Carlton v. Cameron, 54 Tex., 72, 38 Am. Rep., 620; Beebe v. McKenzie (Or.), 26 Am. St. Rep., 296, 24 Pac. Rep., 236; Hazelton v. Reed, 46 Kan., 73, 26 Pac. R., 450, 26 Am. St. Rep., 86; Nichols v. Emery, 109 Cal., 323, 41 Pac. R., 1089, 50 Am. St. R., 43; Simon v. Wildt, 84 Ky., 157; Ward v. Ward, 104 Ky., 857; Rawlings v.

Nuckols, &c. v. Stone.

McRoberts, 95 Ky., 346; Pelley v. Eailes, 21 Ly. Law Rep., 1395; Phillips v. Thomas Lumber Co., 94 Ky., 445; Burlington Univ. v. Barrett (Ia.), 92 Am. Dec., 383, et seq. (note).

BRECKINRIDGE & SHELBY for appellee.

1. All rules for construction and all canons of interpretation are for the purpose of ascertaining and carrying out the intention of the parties to that instrument, or of the meaning of the instrument itself, whether it be a constitution, a statute, a treaty, a conveyance or a contract. The only limitation to this general statement is that there are certain fixed rules of law which, when in conflict with the supposed intention, will control.

2. the first rule, therefore, in the interpretation of a paper is, what is the intention of the parties? Probably the most important rule in ascertaining this intention is, that that intention shall prevail if possible; that such construction will be given to the instrument itself, as well as to the various recitals and stipulations of the instrument, as to effectuate the intention.

3. There is no principle better settled than that a delivery does not have to be manual or formal; that it does not have to be made by the grantor directly to the grantee.

4. The principle is that wherever any donor is making what may be fairly described to be a voluntary settlement, the settlement will be held binding in equity as indicating the intention of the donor, even though the paper itself remain in the possession of the grantor.

5. Of course, there is no doubt that such a deed or settlement will be held binding when retained by the grantor with the knowledge and assent of the grantee.

6. The principle for which we contend is that the intention of the grantor controls where the conveyance is handed by the grantor to any one to be held for a grantee, and the grantor does not recall that conveyance; and delivery by the custodian to the grantee after the death of the grantor conveys to that grantee a perfect title.

## AUTHORITIES CITED.

Rawlings v. McRoberts, 95 Ky., 302; Mitchell v. Ryan, 3 Ohio St., 380 (by Judge Thurman); Newton v. Benton, 41 Iowa, —; Scrugham v. Moore, 15 Wendell, 547; Souverbye v. Arden, 1 John. Ch., 108; 2 Washburn on Real Property, pp. 579, 585-6; 4 Kent., s. p. 454; 17 Johnson, 554; Ruggles v. Lawson, 13 Johnson, 285; Stevens v. Hurt, 54 Penn., 26, 7 Am. Dec., —; Foster v. Mayfield, 3 Met., 415; 37 Am. Dec., —; Hatch v. Hatch, 9 Mass., 307, 6 Am. Dec., 67; Wheelwright v. Wheelwright, 3 Am.

Nuckols, &c. v. Stone.

Dec., 66; Morse v. Storow, 13 Vermont, —; Woodward v. Cramp, 22 Iowa, 407; Belden v. Carter, 4 Day, 66, 4 Am. Dec., 185; Lippold v. Lippold, 112 Iowa, 134, 83 N. W., 809; Wall v. Wall, 30 Miss., 91, 64 Am. Dec., 148; Hulick v. Scovell, 9 Ill., 159; Goodpaster v. Leathers, 123 Ind., 121; Kelly v. Kelly, 8. Met. (Mass.), 436; Haug v. Haug, 53 Minn., 33, 55 N. W., 1114; Haydon v. Easter, &c., 15 Ky. Law Rep., 597.

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

On May 27, 1897, Dudley Dedman delivered to Z. Gibbons a deed to 96 acres of land in Fayette county —the appellant, S. C. Nuckols, being the grantee in the deed—and the following written agreement was then signed by the three parties:

"Agreement made and entered into between Dudley Dedman, party of the first part, and Samuel C. Nuchols, party of the second part:

"Witnesseth, That, whereas, the party of the first part has this day executed to the party of the second part a deed to certain real estate in Fayette county, the same conveyed to the party of the first part by Lewis Jochum and wife by deed of record in the office of the clerk of the Fayette county court in deed book 206, page 215, excepting so much of said land as the party of the first part has heretofore conveyed to A. M. Fields; and said deed containing stipulations with reference to what party of the second part shall do with reference to said land, in which party of the first part retains a life interest; and said deed fixing how the property shall be disposed of by party of the second part after the death of the first party.

"It is agreed between the party of the first part and the party of the second part that said deed, which has been delivered to the party of the second part, shall be surrendered by him to the party of the first part whenever he shall demand said deed and receipt to said Z. Gibbons for the same and in the presence

of some witness; and upon receiving said deed, said party of the first part shall be at full liberty to destroy said deed and cancel said conveyance as completely as if it had never been made; and said Z. Gibbons to signify his obligations, and that of his heirs and persons representing him, to hold said deed and to deliver to Dedman, party of the first part, if he shall demand same, as above provided, said Z. Gibbons signs this paper.

"Upon the death of the party of the first part the said deed is to be delivered to the party of the second part, or, if he shall have died in the meantime, said Z. Gibbons shall lodge the deed for record in the office of the clerk of the Fayette county court.

"Witness our hands this 27th day of May, 1897.

[Signed]    "DUDLEY DEDMAN,
            "S. C. NUCKOLS,
            "Z. GIBBONS."

"On July 2d Dedman demanded the deed from Gibbons, and receipted to him for it in the presence of a witness, and Gibbons returned it to him. The following indorsement was then placed upon the agreement:

"On this 2d day of July, 1897, I have received from Z. Gibbons the deed mentioned in this contract, as witness my hand.

[Signed]    "DUDLEY DEDMAN.
[Witness]   "G. A. DE LONG."

On the same day another deed was drawn, which was put in the hands of Gibbons under the following written contract:

"Whereas, Dudley Dedman on this 2d day of July, 1897, has received from Z. Gibbons the deed held by him under written contract dated May 27, 1897, and,

"Whereas, Dudley Dedman has cancelled that

deed, as he retained the right to do under said written contract, now he has made a new deed to said Samuel C. Nuckols, as trustee, in trust to convey a one-tenth interest to each of his brothers and sisters and retain a one-tenth interest in fee simple, and to convey the other undivided one-half to Mrs. Pattie D. Stone in fee simple whenever the deed prepared by Z. Gibbons and signed by Dudley Dedman shall be delivered to him according to the terms of this contract; and it is understood that all the terms of the first contract, dated May 27, 1897, excepting as herein stipulated, shall be carried out; and it is understood that said Dudley Dedman has the right to receive the said deed from said Z. Gibbons and to cancel same, and upon said canceling said deed shall have no further effect whatever; and said Z. Gibbons is not to deliver said deed to said Dudley Dedman except upon taking his written receipt for the same, attested by witness; and said Z. Gibbons binds himself to hold said last mentioned deed upon the same terms and conditions that he held the deed that has been cancelled.

"Witness our hands this July 2, 1897.

> [Signed]  "DUDLEY DEDMAN,
> "Z. GIBBONS,

[Witness]  "JOHN J. McKENNA."

The deed referred to in the above agreement is as follows:

"This indenture made this 2d day of July, 1897, between Dudley Dedman, of Fayette county, Kentucky, party of the first part, and Samuel C. Nuckols, of Woodford county, Kentucky, party of the second part;.

"Witnesseth, That in consideration of one dollar ($1) cash in hand paid, and his love and affection for

the grantee and the other beneficiaries under this deed, the party of the first part has bargained and sold, and does hereby give, grant and convey unto the party of the second part and his successors and assigns, the following described land, to wit: [Description of the land.]

"To have and to hold said property unto the party of the second part, and his successors and assigns, as herein provided; and said party of the first part hereby releases all his right, title and interest in said property, including the homestead exemption allowed by law, and covenants to warrant generally the property hereby conveyed. Grantor retains said property and the use, possession and occupation and entire control of same during his natural life.

"The party of the second part takes said property as trustee in trust, that at the death of grantor, he shall convey an undivided one-half of said property to Pattie D. Stone in fee simple, and to each of his brothers and sisters, Charles, Henry, James and Maggie Stockton, an undivided one-tenth interest in said property in fee simple, himself retaining an undivided one-tenth interest therein in fee simple; and each of said deeds shall be by special warranty.

"If Pattie D. Stone shall die before grantor, her share shall go to her children, or the survivors of them; and any other beneficaries dying before grantor, his or her share shall go to his or her child or children; if none, to his [her] brothers and sister.

"In testimony whereof the party of the first part hereunto sets his hand the day and year as above written.

[Signed]   "DUDLEY DEDMAN.

"Acknowledged by Dudley Dedman 2d day of July, 1897.

[Signed]   "CLAUDE CHINN, Clerk."

Thereafter, on June 30, 1902, Dedman died, leaving a will, which was executed before the deed referred to, and without having demanded the deed from Gibbons, or in any way undertaking to cancel it.  After his death Nuckols refused to carry out the deed. Thereupon this suit was filed by Pattie D. Stone, praying that she be adjudged the owner of one-half of the land, and that commissioners be appointed to divide it and set apart her share to her.  The circuit court adjudged her the relief sought, and the defendants appeal.

In 3 Washburn on Real Property, sec. 2156, the rule of law as to deeds delivered by the grantor to a third person, and directed by him to be delivered to another after his death, is thus stated: ''So long as the deed is within the control of the grantor and subject to his authority, it can not be held to have been delivered. Thus, where the grantor placed a deed in another's hands, and directed him to keep it till he (the grantor) died, and to hold it subject to his control as long as he lived, and then to deliver it to the grantee, it was held to be no delivery.  A deed can not be even an escrow, unless the grantor part with control of it, until the condition on which it depends happens or fails.''  (See also, to same effect, 9 Am. & Eng. Ency. of Law, p. 155; 13 Cyc., 569; note to Munro v. Bowles, 54 L. R. A., 865, and cases cited.)

On the other hand, in Ruggles v. Lawson, 7 Am. Dec., 375, it was held by the Supreme Court of New York, where a deed was duly executed by the grantor, and delivered to a third person, to be delivered to the grantees in case the grantor should die before having made a will, and the grantor died without having made a will, that the deed which was delivered after his death was valid, and took effect from its first delivery.

In Wall v. Wall, 64 Am. Dec., 147, the deed contained this clause: "I reserve to myself the right to revoke it at any time during my life by filing in the clerk's office a written revocation under my hand and seal."

It was held by the Court of Appeals of Mississippi that the deed was valid, not having been revoked in the manner provided. Concluding the case, the court said: "Upon the whole, we consider that this deed conveyed the present right to the property, to be enjoyed in possession at the donor's death, and subject to his power to annul it in the way limited in the deed. This was a substantial right in the donees, which excluded the general power of alienation by the donor, and of revocation in any other mode than that prescribed in the deed. And in this consists the difference between such a conveyance and a will—that by the former a present interest vests, which will take place in possession in futuro, unless defeated in the mode and according to the terms specified in the conveyance; and in the latter no right, estate, or interest whatever vests until the death of the testator. In the one case the conveyance takes effect in praesenti to a certain extent; in the other it has no effect whatever until the death of the testator."

These cases and some others which follow them are sometimes said to be in conflict with the general rule above quoted from Washburn on Real Property, which is supported by the great weight of authority, but we do not see that they are. It is conceded in all the cases that if a present interest does not pass the deed is ineffective. If a present interest passes, the interest is none the less real because it is defeasible or may be defeated by the grantor in a certain way, for, if it is not defeated by the happening of the contingency, it is as certain as if no condition

had been annexed. So in each case, after all, the turning point is whether a present interest vests in the grantee under the deed.

In the case before us, if the grantor had reserved in the deed power in himself to defeat its provisions by conveying the property to another in his lifetime by a deed duly executed, it could not be maintained that, if he failed to make such a disposition of the land, the deed would be invalid, for the grantor had the right to convey either a defeasible fee or a fee simple, and, if the condition did not happen by which the defeasible fee would be defeated, the title became perfect. Where a deed is held by the third person as the agent of the grantor, and is subject to his control, the deed is still his property, and there has been no delivery, and therefore no title passes; but, where the deed has been delivered, the fact that its operation may be defeated in a certain way, either by the grantor or another, renders it none the less operative until the defeasance occurs.

In the case at bar the deed and the written contract of the same date made at the same time must be read together. The written contract of July 2d refers to the previous contract of May 27th as part of it, and therefore that contract is also to be considered. In the deed the grantor retained a life estate in the property. This was entirely unnecessary, if he did not intend it to have any operation, for there was no future event upon which this clause could take effect, and it was necessarily intended that it should take effect then. In other words, he then conveyed the property to the grantees, reserving to himself a life estate, and also reserving by the other paper the power to cancel the deed in a certain way. He thus vested the fee in the grantees, subject to his life es-

tate, and also subject to his power to cancel the deed in the manner specified. But he could not cancel it in any other way. Reading the two papers together, we think they necessarily are the same in effect as if in the body of the deed the grantor had reserved the right to cancel the deed by a writing delivered to Nuckles, signed by him in the presence of a witness. In such cases the fact that the grantor reserves a life estate to himself is given effect as illustrating his intent that the deed should be operative as a present transfer of the title. (Ball v. Foreman, 37 Ohio St., 132; Miller v. Meers, 155 Ill., 284, 40 N. E., 577; Martin v. Flaharty [Mont.], 32 Pac., 287, 19 L. R. A., 242, 40 Am. St. Rep., 415.) The reservation of a life estate by the grantor was meaningless, unless he intended a present interest to vest in the grantees. He thereby necessarily recognized the grantees as the owners of the property, subject to the life estate. The right which he also reserved to cancel the deed in a certain way is not inconsistent with this, but rather gives force to it, for, if the deed was subject to his general control, and was held by Gibbons merely as his agent, then there was no need that a special mode of reclaiming the deed or canceling it should be reserved by him. When the two papers are taken together, their fair meaning is that the deed was to be operative unless defeated by him in the manner pointed out. The estate which was thus granted, and which then vested in the grantees, not having been defeated in the manner provided, became absolute. A cardinal rule of construction is that an instrument, if it can be fairly done, will be so construed as to give it some operation rather than so as to make it abortive. In this case the grantor acknowledged the deed. He had a carefully worded instrument drawn by an attorney, and this instrument was signed by

him and the attorney. We can not presume that he intended to do a vain thing, if the language of the instrument is fairly capable of a construction that will give it effect. If he had intended no estate to vest in the grantees, there was no reason for his reserving a life estate, and all he need have said in the other paper was that Gibbons was to hold the deed subject to his orders. We can not reject material provisions of the writings in order to arrive at a construction of them that will give no effect to the transaction.

Judgment affirmed.